**UNITED STATES, Appellee,**

v.

**Sergeant Kenneth H. ROBINSON, 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, United States Army, Appellant.**

**ACMR 8702356.**

U.S. Army Court of Military Review.

2 Aug. 1988.

For Appellant: Major Eric T. Franzen, JAGC, Captain Jon W. Stentz, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Daniel J. Dell'Orto, JAGC, Captain Cynthia M. Brandon, JAGC (on brief).

Before ADAMKEWICZ, LYMBURNER, and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

ADAMKEWICZ, Senior Judge:

Appellant was brought to trial by a military judge sitting as a general court-martial at Bamberg, Federal Republic of Germany, on charges of wrongful use, possession with intent to distribute, and distribution of marijuana (Charge I and its specifications), and indecent solicitation (Charge II), in violation of Articles 112a and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 934 [hereinafter UCMJ], respectively. The specification of possession with intent to distribute was dismissed on multiplicity grounds, while the charge of indecent solicitation was dismissed for failure to afford a speedy trial on that offense. Before this court, appellant repeats his assertion that the drug offenses should also have been dismissed on speedy trial grounds.[1]

---

**1.** Pursuant to his pleas, appellant was convicted on separate specifications of wrongful use and of wrongful distribution of marijuana. He was sentenced to a dishonorable discharge, confinement for eight years, total forfeitures, and reduction to Private E-1. Pursuant to a pretrial agreement, the convening authority approved a dishonorable discharge, confinement for six years, total forfeitures, and reduction to Private E-1.

## I

Appellant was first implicated in marijuana offenses in late March of 1987 and, upon questioning by members of the Criminal Investigation Command (CID), confessed and named others involved in drugs. The investigation into drug use in the ensuing weeks became quite widespread, involving thirty to forty suspects. In the expanding investigation, in order to assure sufficient corroboration of any suspect's involvement in the drug charges under investigation, trial counsel directed CID not to title an individual unless he was implicated in at least two statements. Between the end of March and 7 May 1987, a number of soldiers made sworn statements to CID implicating the appellant in drug offenses. These statements contained substantially all of the information relied upon in the drafting of drug charges against the appellant.

In the meantime, on 11 April 1987, Private First Class (PFC) McKay told Chaplain Danford that the appellant had made sexual advances to him, with threats, which frightened him. The chaplain talked to appellant's squadron commander and the decision was made to transfer the appellant from Grafenwoehr to Warner Barracks in order to separate him from PFC McKay. At Warner Barracks on 14 April 1987 appellant's freedom of movement was limited by the commander.[2] Although the exact nature of the limitations was disputed at trial, the military judge found restriction in

lieu of arrest and hence pretrial restraint as to the solicitation charge commencing on 14 April.[3] Both charges were eventually preferred on 5 August 1987.

Testimony at trial, however, made it clear that the restraint initially was solely for the indecent solicitation offense. Only on 18 June, when appellant's company commander considered lifting the restraint but decided not to do so in part because of the drug charges, did the restraint relate to the drug offenses. Thus the military judge computed two different time periods for speedy trial purposes: 14 April for the indecent solicitation, and 18 June for the drug offenses. On that basis, and after deducting periods of delay for which the government was not accountable, R.C.M. 707(c), the delay for the indecent solicitation exceeded 120 days and that charge was dismissed, while the drug charges were brought to trial in less than 120 days and so were not dismissed.[4] Before us, appellant asserts that the military judge erred in assigning different starting periods for the speedy trial "clock" for the two separate charges. We disagree.

## II

### A.

■ The question we must first address is what is the inception date to be charged for the imposition of restraint. Rule for Courts–Martial 707 lays out requirements for a speedy trial.[5] Rule for Courts–Mar-

---

2. The record of trial reveals that the command legal office was not aware of the pretrial restraint until shortly before trial. The charge sheet, DD Form 458, indicates that appellant was under no restraint. *Cf.* Note, *The Silent Enemy*, The Army Lawyer, July 1985, at 38 (charges dismissed on speedy trial grounds when prosecutors unaware that pretrial restraints imposed).

3. While the commander concerned may not have intended to impose pretrial restraint within the meaning of the speedy trial provisions of Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 707(a) [hereinafter Manual or M.C.M., 1984 and Rule or R.C.M., respectively], we echo the warning of Dep't of Army, Pam. No. 27–173, Legal Services–Trial Procedure, para. 8–6*b* (15 Feb. 1987) [hereinafter DA Pam. 27–173]:

"[C]ommanders must be wary of any limitations placed on soldiers who are pending charges as a court may construe the limitation as pretrial restraint."

4. A chronology of events with relevant dates is attached as an appendix.

5. Rule 707. Speedy trial
(a) *In general.* The accused shall be brought to trial within 120 days after the earlier of:
 (1) Notice to the accused of preferral of charges under R.C.M. 308; or
 (2) The imposition of restraint under R.C.M. 304(a)(2)–(4);
....
(b) *Accountability.*
....
 (4) *Multiple charges.* When charges are preferred at different times, the inception for each

tial 707(a) pertinently provides that the accused shall be brought to trial within 120 days of the earlier of preferral of charges or imposition of restraint. Rule 707(b)(4) provides that, when charges are preferred at different times, the inception date for each is separately computed. Appellant's position is that, unless charges are preferred separately, a violation of the 120–day rule under R.C.M. 707(a)(2) requires dismissal of all charges. We think this a strained interpretation.

When charges are separately preferred, separate speedy trial clocks are run on each charge. In *United States v. Mladjen,* the accused was apprehended on charges which were subsequently referred to court-martial. *Id.,* 41 C.M.R. 159 (C.M.A.1969). The trial was delayed, however, while other offenses were investigated and eventually joined for trial with the earlier offenses. The Court of Military Appeals held that the two sets of charges had different starting dates for speedy trial purposes: "a period of investigation is normally not part of the period for which the Government is accountable in determining the timeliness of prosecution, unless the suspect or accused is confined or restrained *in connection with those charges.*" *Id.* at 161 (emphasis added). *Accord, United States v. Talavera,* 8 M.J. 14, 17 (C.M.A.1979) (where there are multiple specifications, the proceedings as to each must be considered separately).

■ A similar analysis is, we believe, appropriate even when the charges are not preferred separately. Any other interpretation would require the government to prefer separate charges for all known offenses in order to prevent a successful speedy trial challenge on one offense from infecting all other offenses preferred at the same time, an effect that is contrary to logic and the thrust of *stare decisis.* *Cf. United States v. Nash,* 5 M.J. 37 (C.M.A. 1978) (where accused was released from confinement and then reconfined for offenses unrelated to charges at court-mar-

tial, the reconfinement time was not considered for speedy trial purposes); *United States v. Miller,* 2 M.J. 77 (C.M.A.1976) (confinement resulting from earlier nonjudicial punishment which was unrelated to accused's court-martial was not counted for speedy trial purposes).[6] Accordingly, we hold that, in order to commence the speedy trial clock, the imposition of restraint under R.C.M. 707(a)(2) must be "in connection with" the specification being challenged. We may suspect that it will be a rare case where the government will be able to show that the restraint was not at least in part imposed as to all the offenses preferred together, but we will not foreclose that opportunity. In this case, the government met that challenge. Thus the formal pretrial restraint on the drug offenses commenced no earlier than 18 June 1987.

### B.

The next issue is what effect that restraint has for speedy trial purposes. As noted earlier, R.C.M. 707(a) treats the imposition of restraint as a trigger. Recently, in *United States v. Gray,* 26 M.J. 16 (C.M. A.1988), the Court of Military Appeals attempted to provide guidance on the application of R.C.M. 707. Unfortunately for our review, the court was unable to state definitively at what point the speedy trial clock should start to run when pretrial restraint *precedes* the preferral of charges. Judge Sullivan, writing the lead opinion, concluded that "only pretrial restraint when charges are pending is sufficient to start the clock under R.C.M. 707(a)," and that "charges are pending in the military justice system when charges are preferred." *Id.* at 19 (footnote omitted). Chief Judge Everett opined that accountability began with the restraint, *id.* at 21–22 (Everett, C.J., concurring in the result), while Judge Cox noted that speedy trial accountability does not start until the accused is notified of charges, *id.* at 22–23 (Cox, J., concurring in the result). In this case, the application of R.C.M. 707(a) provides two possible incep-

---

shall be determined from the date on which the accused was notified of preferral or on which restraint was imposed on the basis of that offense.

6. The nonjudicial punishment authorized confinement because the accused was embarked in a vessel. UCMJ art. 15(b)(2)(A), 10 U.S.C. § 815(b)(2)(A).

tion dates for the drug offenses: 5 August, the date the accused was informed of the preferral of the charges or 18 June, the date restraint was imposed for the drug offenses. Until such time as further clarification is provided, we will apply the rule that, under the factual situation presented, the initiation of pretrial restraint under R.C.M. 304(a),[7] other than conditions on liberty pursuant to R.C.M. 304(a)(1), for an offense, or notification to an accused of preferral of charges for that offense, constitutes the inception date to measure the R.C.M. 707 accountable period on that offense.[8] We thus start the speedy trial clock, as did the military judge, at 18 June. With that as inception date, there is no violation of the 120–day rule.

### III

There is, however, one further issue in this case. The appellant was under restraint, albeit on the wrongful solicitation charge only, from 14 April 1987. Although it may be argued from the record that there was sufficient evidence to justify formal charges for the drug offenses as of that date, it is abundantly clear, as indeed stipulated by the parties at trial and found by the military judge, that by 7 May 1987 most of the information upon which preferral on the drug charge was based had been received by the government. Thus, by that date, "the Government had in its possession substantial information on which to base preference of charges." *United States v. Johnson*, 48 C.M.R. 599, 601 (C.M.A.1974). In a case where an accused is confined, the possession of such information is sufficient to start the speedy trial clock on additional offenses. *Id.; accord United States v. Boden*, 21 M.J. 916 (A.C.M.R.1986). *See also United States v. Talavera*, 8 M.J. 14 (C.M.A.1979). A service-member's right to a speedy trial is based upon a number of constitutional, statutory, executive and judicial sources, and each may have "a different trigger for Government accountability and a different test for determining whether the accused's speedy trial rights have been violated." DA Pam. 27–173, para. 15–1c. *Johnson* and *Boden* involved application of the 90–day confinement standard found in R.C.M. 707(d) and *United States v. Burton*, 44 C.M.R. 166 (C.M.A.1971), which in turn were based upon the speedy trial requirements found in Article 10, UCMJ, 10 U.S.C. § 810 (immediate steps shall be taken to try or release a servicemember who is in arrest or confinement). In light of the significant distinction between confinement and other restraints on liberty, we do not believe that the *Johnson* rule is appropriate where an accused is under pretrial restraint not tantamount to confinement. Here, for example, the appellant was under a moral rather than physical restraint, performed normal military duties, had access to facilities such as a book store, a cafeteria, a convenience store, a movie theater, an exchange and a gym. *Cf. United States v. Williams*, 37 C.M.R. 209 (C.M.A.1967) (unduly extended restriction was tantamount to "arrest" for purposes of Article 10); *United States v. Smith*, 20 M.J. 528 (A.C.M.R.1985) (discussing relevant factors to be considered in determining whether restriction is tantamount to confinement). In view of the

---

7. Rule 304. Pretrial restraint.
   (a) *Types of pretrial restraint.* Pretrial restraint is moral or physical restraint on a person's liberty which is imposed before and during disposition of offenses. Pretrial restraint may consist of conditions on liberty, restriction in lieu of arrest, arrest, or confinement.
   (1) *Conditions on liberty.* Conditions on liberty are imposed by orders directing a person to do or refrain from doing specified acts....
   (2) *Restriction in lieu of arrest.* Restriction in lieu of arrest is the restraint of a person by oral or written orders directing the person to remain within specified limits....
   (3) *Arrest.* Arrest is the restraint of a person by oral or written order not imposed as punish-

ment, directing the person to remain within specified limits....
   (4) *Confinement.* Pretrial confinement is physical restraint, imposed by order of competent authority, depriving a person of freedom pending disposition of offenses. *See* R.C.M. 305.

8. We believe that the rules we announce and the result we reach on the facts before us are in harmony with the UCMJ, the Manual, and with prevailing opinions from the United States Court of Military Appeals. *Ex factis jus oritur* (the law grows out of the facts).

draconian remedy,[9] we hesitate to expand an accused's speedy trial rights into areas not sanctioned by Congress, the President, or higher appellate courts. Further, our extension of the *Johnson* holding would destroy the balance between individual rights and governmental interests so carefully drawn in the Manual provisions under review. Instead, we will apply the language of R.C.M. 707(a). We hold that, where an accused is under restriction in lieu of arrest under R.C.M. 304(a)(2) for an offense, accountability under R.C.M. 707(a) on another offense does not run from the date that the government has substantial information on which to base preferral of charges for the latter offense.[10] There may be several different speedy trial clocks in motion even when multiple charges are preferred at the same time.

Thus the government has not exceeded the 120–day limit and hence not violated appellant's right to a speedy trial on the drug charge, nor has the appellant claimed that his defense to the drug charges was impaired by his pretrial restraint. Accordingly, the findings of guilty and the sentence are affirmed.

LYMBURNER and SMITH, JJ., concur.

## APPENDIX
### Chronology of Events

| Date | Events |
| --- | --- |
| 29 March 1987 | First statement by Private (PV2) Balsley implicating appellant in drug offenses. |
| 30 March 1987 | Statements by Private (PV1) Brooks and Private First Class (PFC) Marnell implicating appellant in drug offenses. |
| 31 March 1987 | Appellant makes statement to Criminal Investigation Command (CID) incriminating himself in drug offenses and naming others involved in drugs. PFC Stewart makes a statement implicating appellant in drug offenses. |
| 8 April 1987 | CID opens Report of Investigation. |
| 11 April 1987 | PFC McKay tells Chaplain Danford that appellant made sexual advances towards him, with threats, which frightened him; Chaplain talks to Lieutenant Colonel (LTC) Skidmore, appellant's Squadron Commander. |
| 13 April 1987 | CID coordinates with trial counsel on investigation; trial counsel says to title only those individuals mentioned in at least two statements. |
| 14 April 1987 | Appellant returned from Grafenwoehr to Warner Barracks to separate him from PFC McKay. |
| 22 April–22 May 1987 | CID interviews approximately 32 suspects or witnesses. Four or five more are interviewed after this period. |
| 23 April 1987 | PV2 Anthony Reese makes a statement implicating appellant in drug offenses. |
| 24 April 1987 (approx.) | Commanders claim only pass privileges and civilian clothes pulled; appellant and charge of quarters testify appellant was "restricted." |
| 7 May 1987 | PFC Stewart makes another statement implicating appellant in drug offenses. Sergeant (SGT) Berry and PFC Jones make statements implicating appellant in drug offenses. |
| late May 1987 | Law Center receives preliminary CID report. |

9. "Failure to comply with [R.C.M. 707(a)] shall result in dismissal of the affected charges upon timely motion of the accused." R.C.M. 707(e).

10. Of course, if there is prejudice or intentional governmental hindrance to the accused in the preparation of his defense, due process issues become a concern. *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *cf. Barker v. Wingo,* 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972) ("the inability of a defendant adequately to prepare his case skews the fairness of the entire system").

| Date | Events |
| --- | --- |
| 18 June 1987 | CID continues drug investigation (30–40 suspects); company commander decides not to restore appellant's freedom of movement. |
| 5 Aug 1987 | Charges preferred and accused informed of charges. |
| 15 Oct 1987 | Trial commences (approx. 184 days after 14 Apr). Military judge rules 188 days' restriction (15 Apr to 19 Oct) for Charge II (indecent solicitation) and therefore dismissed pursuant to R.C.M. 707(a)(2) and (e). Judge further rules that accountability for Charge I (drugs) did not start until 18 June (123 days minus 11 days of defense delay, leaving 112 days) and hence no R.C.M. 707 violation. |